## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF WEST VIRGINIA
## HUNTINGTON

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF Gray iPhone contained in a White and black case, International Mobile Subscriber Identity 310150604956056 currently located at DEA District Office, Charleston, WV** | **Case No. 3:25-mj-00028** |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, **Gabriel J. Fernandez**, being first duly sworn, do hereby depose and say:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with the Drug Enforcement Administration and have been since July 2023. I received 17 weeks of training in narcotics investigations and related legal matters at the DEA Training Academy in Quantico, Virginia. Prior to my employment as a Special Agent with the DEA, I was employed with the U.S. Courts, as a U.S. Probation Officer in the Southern District of Florida from January 2016 until July 2023. I have a Bachelor of Arts degree in Psychology from Florida International University, in Miami, FL.

2.      I am currently assigned to the DEA Louisville Field Division, Charleston, WV Field Office, which is comprised of DEA Special Agents whose primary responsibilities include investigating individuals or groups who have committed violations of the federal narcotics laws. During my tenure as a DEA agent, I have conducted and participated in numerous investigations, and have debriefed, or participated in debriefings of defendants, informants, and witnesses who had personal knowledge regarding federal narcotics violations. As a Special Agent, I am an

investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7).

3.    For the reasons stated below, there is probable cause to believe that evidence relating to violations of federal law will be found in the stored electronic information and communications in the cellular telephone described more fully in Attachment A (Device). These violations include Title 21, United States Code, Sections 846 & 841(a)(1), Conspiracy to Distribute Controlled Substances and Possession with the Intent to Distribute a Controlled Substance, to wit: fentanyl and crack cocaine.

4.    The information set forth below is either known to me personally or was related to me by other law enforcement personnel.  This Affidavit is submitted in support of a search warrant for the stored electronic information and communications on the Device further described in Attachment A and therefore, does not set forth all my knowledge about this matter. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data, as more information and communications could be stored on this phone, as more particularly described in Attachment B.

<u>**IDENTIFICATION OF THE DEVICE TO BE EXAMINED**</u>

5.    The Device is a gray iPhone contained in a black and white case, bearing International Mobile Subscriber Identity 310150604956056, which was recovered from 2108 12th Avenue, Huntington, West Virginia, believed to be used by Tyron KIMBRO, and is described more fully in Attachment A.

2

6.      The Device is currently stored at DEA Louisville Field Division, Charleston, WV Field Office evidence room. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as it was when the Device first came into possession of the DEA.

## PROBABLE CAUSE

7.      On March 13, 2025, SA Fernandez and SA John Tonkin spoke with a DEA Confidential Source (CS) about KIMBRO. CS is known to investigators and has previously given reliable information to investigators regarding the dealing of illicit drugs. CS reported that "T-Mow" (later identified as KIMBRO) was a crack cocaine dealer operating in the Huntington, West Virginia area.  CS stated that they had previously purchased "eightballs" (3.5 grams) or "zip[1]" (ounce) level quantities of crack cocaine from KIMBRO at KIMBRO's residence located at 2108 12th Avenue, Huntington, West Virginia (the PREMISES). CS reported he/she would purchase an eightball up to two to three times per week and had previously purchased an eightball from KIMBRO for $200 at the PREMISES approximately a week prior to February 20, 2025. CS was provided a photograph of KIMBRO and CS identified KIMBRO as T-Mow.

8.      CS is a confidential source that provides information and operational assistance in return for the consideration of judicial leniency.  CS has been an active informant for approximately one month. During this time, CS has provided information independently

---

[1] Per SA Fernandez's training and experience, the term "zip" is a slang term, often referring to an ounce-level drug quantity. In addition, the CS confirmed a zip was an ounce-level drug quantity.

corroborated by law enforcement investigators using various means. CS had previously attempted a controlled delivery of a kilogram of cocaine on behalf of law enforcement. [2]

9.      A search of KIMBRO's name through DEA records showed that he was previously arrested on March 27, 2013, following the execution of a search warrant at 1217 ½ 10th Avenue, Huntington, West Virginia.  Law enforcement seized 300 grams of crack cocaine and $10,000 in U.S. currency.

10.      Based upon the above information, on March 18, 2025, SA Fernandez and SA Tonkin utilized CS to conduct a controlled purchase of approximately one ounce of crack cocaine from KIMBRO at the PREMISES. SA Fernandez and SA Tonkin, met with CS at a neutral location. SA Fernandez had CS place a recorded phone call to KIMBRO (681-279-1400) confirming he was in the area of the PREMISES and was there for that "zip." CS was provided an audio/video recording device and $1,600 of official advanced funds and was monitored as the CS entered the PREMISES. Shortly thereafter, CS met with SA Fernandez and SA Tonkin and relinquished approximately one ounce of crack cocaine which CS reported to have purchased from KIMBRO.

11.      On March 28, 2025, SA Fernandez and SA Tonkin utilized CS to conduct another controlled purchase of approximately two ounces of crack cocaine from KIMBRO at the PREMISES. SA Fernandez had CS place a recorded phone call to KIMBRO (681-279-1400) confirming CS was in the area of the PREMISES. CS was provided an audio/video recording device and $3,000 of official advanced funds and was monitored as the CS entered the

---

[2] CS has misdemeanor convictions and is a convicted felon. CS is known to investigators and has previously given credible and reliable information regarding the dealing of illicit drugs.

4

PREMISES. Shortly thereafter, CS met with SA Fernandez and SA Tonkin and relinquished approximately two ounces of crack cocaine which CS reported to have purchased from KIMBRO. SA Fernandez reviewed video footage of the second controlled purchase and confirmed KIMBRO conducted the hand-to-hand transaction of approximately two ounces of crack cocaine for $3,000 of official advance funds.

12.    On April 8, 2025, SA Fernandez and SA Tonkin utilized CS to conduct a third controlled purchase of approximately one ounce of crack cocaine from KIMBRO at the PREMISES. SA Fernandez had CS place a recorded phone call to KIMBRO (681-279-1400) confirming CS was in the area of the PREMISES. CS was provided an audio/video recording device and $1,600 of official advanced funds and was monitored as the CS entered the PREMISES. Shortly thereafter, CS met with SA Fernandez and SA Tonkin and relinquished approximately one ounce of crack cocaine which CS reported to have purchased from KIMBRO. SA Fernandez reviewed video footage of the third controlled purchase and confirmed KIMBRO conducted the hand-to-hand transaction of approximately one ounce of crack cocaine for $1,600 of official advance funds.

13.    On April 22, 2025, DEA Agents of the Charleston District Office (DO), in conjunction with the Huntington Police Department, executed a search warrant at the PREMISES. KIMBRO was located and detained, and a house clearing ensued. Following the house clearing, SA Fernandez asked KIMBRO if he was willing to be interviewed, to which KIMBRO declined. SA Matthew Yount and SA John Tonkin.

14.    During a search of the residence, Agents located five (5) plastic bags of a grey, purple and white powder, later field-tested positive for fentanyl, and one (1) plastic bag of a

5

white rock-like substance, later field-tested positive for cocaine case, in the pockets and sleeve of hoodie-style sweatshirts hanging in the laundry room. Agents also located one (1) plastic bag of a white rock-like substance, later field-tested inconclusive, in a bedroom that appeared to belong to an adult male, due to the type and size of clothing throughout the room.

15.    During the search of the residence, SA Matthew Yount and SA John Tonkin located one (1) iPhone in a white and black case on a nightstand in the same bedroom where the small fabric drawstring bag containing the white rock-like substance. The iPhone was consistently getting notifications and phone calls. Agents seized the cellular phone.

16.    Agents located and seized the following firearms: one (1) Walther Uzi .22LR rifle that was loaded with a magazine and ammunition in the spare bedroom; one (1) Aero Precision AR15 pistol that was unloaded in the spare bedroom; one (1) PSA AR-15 style 5.56 rifle that was loaded with a magazine and ammunition found in the master bedroom; one (1) Eagle Arms AR-15 style 5.56 rifle that was unloaded without a magazine found in the spare bedroom; one (1) Bushmaster Firearms International 5.56 rifle that was loaded with a magazine and ammunition found in the spare bedroom; and a ammunition can with various ammunition found in the spare bedroom.

17.    I know based upon my training and experience that when individuals use "smart phones", such as the cellular device recovered from 2108 12th Avenue, Huntington, West Virginia, in the course of drug trafficking, evidence of their activities remains on the memory of the phone. Such evidence includes messages, contact lists, call logs, photographs of drugs, money, and co-conspirators, information relative to the ownership, registration, and usage of the device, location information in the form of address searches and mapping information relative to

6

travel in furtherance of the enterprise as well as email communication with suppliers and customers, calendar information, ledgers, and notes.

18.     Searching the cellular telephone for the evidence described above may require a range of data analysis techniques.  In some cases, it is possible for agents to conduct carefully targeted searches that can discern evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence.  Criminals can mislabel or hide directories and other electronic data to avoid detection or take other steps to frustrate law enforcement searches for incriminating data. These steps may require agents to conduct more extensive searches, such as scanning areas of the device's memory not allocated to listed files or opening every file and scanning its contents briefly to determine if it falls within the scope of the warrant.  Considering these difficulties, I request permission to use whatever data analysis techniques appear to be necessary to locate and retrieve the evidence described above.  While the cellular telephone is capable of accessing the internet and service providers maintaining servers or similar electronic storage facilities, this warrant seeks authority solely to examine the memory of the cellular telephone itself.  At no time will techniques be utilized to access data stored at any location other than within the memory of the cellular telephone.

## CONCLUSION

19.     Based upon my knowledge, training, and experience, I believe there is probable cause to believe that evidence of crimes, including violations of Title 21, United States Code, Sections 846 & 841(a)(1), Conspiracy to Distribute Controlled Substances and Possession with the Intent to Distribute a Controlled Substance, to wit: fentanyl and crack cocaine will be found in the stored electronic information and communications within the Device.

7

20.    SA Fernandez, having signed this Affidavit under oath as to all assertions and allegations contained herein, states that its contents are true and correct to the best of my knowledge, information, and belief.

Respectfully submitted,

*Gabriel Fernandez*
_____
Gabriel Fernandez
Special Agent - DEA

Subscribed and sworn to before me on **5|2|2025** :

_____
JOSEPH K. REEDER
UNITED STATES MAGISTRATE JUDGE

8